```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
GREAT AMERICAN INSURANCE CO. OF NEW
YORK,

                 Plaintiff,           05 Civ. 3586 (LLS)

       v.                             OPINION and ORDER

A/P MOLLER-MAERSK A/S trading as
MAERSK SEALAND; M/V THOR SUSANNE, her
engines, tackle, apparel, etc.; in rem

                 Defendants.
-----------------------------------x
```

Plaintiff Great American Insurance Co. of New York sues as subrogee to recover for the loss of a cargo container shipped under a through bill of lading[1] from Burlington, North Carolina to Guatemala City, Guatemala.

Each side moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. There is no genuine dispute about any material fact underlying the motions, Fed. R. Civ. P. 56(c), and the relevant question is one of law.

---

[1] "A 'through bill of lading' is one by which a carrier agrees to transport goods from origin to destination, even though different carriers (such as a railroad, trucker, or air carrier) may perform a portion of the contracted shipment." Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd., 230 F.3d 549, 552 n.2 (2d Cir. 2000).

A.

On February 25, 2004, defendant Maersk contracted with shipper Karim's International USA S.A. for the carriage of a containerized shipment of 158 cases of yarn from Burlington, North Carolina to Guatemala City, Guatemala. Under the bill of lading, the cargo container was carried by land from Burlington to Port Everglades, Florida where it was loaded aboard the THOR SUSANNE for ocean transport to Santo Tomas de Castilla, Guatemala. The container arrived in Santo Tomas de Castilla without incident.

On March 1, 2004, at approximately 1:00 a.m., the container departed the Maersk terminal at Santo Tomas de Castilla for inland carriage by truck to Guatemala City. The truck proceeded to a security checkpoint just outside the city limit of Guatemala City. After leaving the security checkpoint, at approximately 7:00 a.m. on March 1, 2004, the truck carrying the container was intercepted by armed hijackers who detained the driver for several hours and stole the cargo within the container as well as a radio and cell phone from the driver. On March 2, 2004 the hijacked track was found with physical damage. The cargo was not recovered.

B.

Maersk's bill of lading states the place of delivery as "Guatemala City S/," which signifies "store door," meaning the container is to be delivered to the consignee's address in Guatemala City.  See Deposition Transcript of Messoud Messkoub, Maersk's Director of Risk and Claim Management, 21; September 5, 2006 Declaration of Massoud Messkoub ("Messkoub Dec.") Ex. A.  The container was en route to its delivery address under the bill of lading when it was hijacked.

Maersk's bill of lading also contains a "hijacking clause" which states:

> The carrier shall have no liability whatsoever arising out of or in connection with the acts of any person who unlawfully, by the use of force or threats of any kind, damages, seizes or exercises control over the Goods, over any Sub-Contractor or over any means of transportation or storage of the Goods.

Messkoub Dec. Ex. A.

C.

For the purposes of this motion only, the shipper's subrogee (plaintiff) concedes[2] that the loss was caused by a hijacking and that the sole argument against the

---

[2] Plaintiff's Feb. 16, 2007 Reply Memorandum of Law, p. 1.

-3-

application of the "hijacking clause" is the Harter Act, 46 U.S.C. § 190, which states:

> It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge.  Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

The Harter Act "governs the responsibilities of carriers until 'proper delivery' of the cargo has been made." Colgate Palmolive Co. v. M/V "Atlantic Conveyor", 1996 U.S. Dist. Lexis 19247, at *7 (S.D.N.Y. Dec. 31, 1996).

Plaintiff argues that because the container was not delivered to the consignee's store door in Guatemala City as required by the bill of lading, proper delivery was not made, and thus the Harter Act applies, the hijacking clause is invalid, and the defendants are liable for the loss of the container.  This squarely presents the question:  does

the Harter Act, a maritime law[3], apply to the inland segment of the cargo's carriage under a through bill of lading?

The Fifth Circuit addressed that issue in Mannesman Demag Corp. v. M/V CONCERT EXPRESS, 225 F.3d 587 (5th Cir. 2000). The court faced a lack of precedent by any other circuit court on the issue, but embraced Jagenberg, Inc. v. Georgia Ports Auth., 882 F. Supp. 1065 (S.D. Ga. 1995), as "a thorough and persuasive" opinion "that has been followed by other district courts." Mannesman, 225 F.3d at 593.

Jagenberg involved a contract for the shipment of packages under a through bill of lading obligating the carrier to transport the cargo from The Netherlands to the Port of Savannah, and onward with ultimate delivery in Macon, Georgia. Jagenberg, 882 F. Supp at 1068. The cargo was duly carried to Savannah where it was held in storage until the arrival of an inland trucker who would take it from Savannah to Macon. Id. at 1069. The relevant items were damaged while being retrieved from the storage area in Savannah, before they were loaded onto their inland transport to Macon. Id.

Since those goods were damaged before delivery in Macon, the Jagenberg court stated that it "must either

---

[3] By its terms, the Harter Act applies to carriers transporting goods between U.S. and foreign ports. See § 190 quoted above.

extend the reach of the Harter Act—a maritime law—to the point of delivery in Macon, Georgia, or it must find some principled manner of deciding when a proper delivery occurred beforehand" (id. at 1077).  It reasoned that:

> the Harter Act is at its core a maritime law; the Court is unwilling to rule that simply because private parties enter an intermodal agreement federal maritime legislation is thus extended far beyond its congressionally intended bounds.  The Harter Act is designed solely to regulate the liability of seagoing carriers.
>
> ....
>
> Increasing efficiency and integration in cargo transport continues to blur the lines separating sea carrier responsibilities from those of others.  The Court finds it advisable to keep sea carriers to the standards imposed by the Harter Act until goods are in the hands of land carriers and actually leaving the maritime arena.

Id. at 1077-78 (citations omitted).  Accordingly, the Jagenberg court held that the Harter Act did not stretch "all the way to Macon", id. at 1078, and that proper delivery for Harter Act purposes takes place when the articles are loaded onto the vehicle of an inland carrier. In Jagenberg, the Harter Act applied because the goods were damaged before loading for inland transport.

In Mannesman, the Fifth Circuit adopted the analysis applied in Jagenberg and in Colgate Palmolive Co., supra at p. 4, as "avoid[ing] compulsory application of federal maritime law to non-maritime transportation" (225 F.3d at

594).  The goods involved in Mannesman were shipped under a through bill of lading from Germany to Baltimore, and then transported by trailer toward their destination in Terre Haute, Indiana.  Id. at 588.  They were damaged when the trailer overturned while en route from Baltimore to Terre Haute.  Id.  Applying the foregoing principles, the Fifth Circuit held that "the limitation [of the Harter Act] does not apply to inland transportation in through bills of lading.  A contrary result extends the compulsory applicability of the Harter Act to transportation that Congress almost certainly did not intend to include within that Act."  Id. at 595.

In short, "proper delivery" for Harter Act purposes does not mean delivery to the ultimate consignee at the end of intermodal transportation.  It means delivery to the inland carrier.

In this case, as in Mannesman and Sony Computer Entertainment v. Nippon Exp. U.S.A., 313 F. Supp. 2d 333 (S.D.N.Y. 2004), the loss occurred during cross-country transport toward the ultimate destination, and "long after the cargo was prepared for inland transport under the meaning of the Harter Act, so it does not apply."  Sony Computer Entm't, 313 F. Supp. 2d at 337.

CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's motion is denied. The Clerk will enter judgment dismissing the complaint with costs and disbursements to the defendants according to law.

So ordered.

Dated: New York, New York
       April 13, 2007

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.